Affirmed and Memorandum Opinion filed January 24, 2006









Affirmed
and Memorandum Opinion filed January 24, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00166-CV

____________

 

IN THE INTEREST OF
L.A.M., A CHILD

 

 



 

On Appeal from the 246th
District Court

Harris County, Texas

Trial Court Cause No. 94-61695

 



 

M E M O R A N D U M   O P I N I O N

Andrea Dee McFadden appeals from the trial
court=s final orders
modifying the parent-child relationship regarding L.A.M., a child.  McFadden contends that (1) the trial court
erred by continuing in its final orders certain visitation requirements
contained in the court=s temporary orders, and (2) she did not
consent to having the temporary visitation requirements continued into the
final orders.  We affirm.

Background








McFadden and William Kent Morgan were
divorced in 1996.  McFadden was named
sole managing conservator of their child, L.A.M., who was born in 1992 with
Down Syndrome.  On April 2, 2004, Morgan
filed a Petition to Modify the Parent-Child Relationship, seeking custody of
L.A.M.  McFadden and Morgan entered a
Rule 11 agreement regarding temporary orders, and the trial court granted
temporary orders on April 21, pursuant to the agreement.  These orders named McFadden and Morgan ATemporary Joint
Managing Conservators@ but gave Morgan the right to establish
the child=s primary residence.  The orders further required that McFadden=s visitations with
L.A.M. be supervised as follows:

that all
visitation referenced in this Modified Standard Possession Order for
Respondent, ANDREA MCFADDEN, shall be exercised in the home of the maternal
grandmother, and in the presence of either of her parents.  This provision does not preclude the mother,
child, and one or both of the grandparents from leaving the home.

At a trial on the merits, McFadden=s sister, Angie
Thomas, testified that on March 30, 2004, she called McFadden, and from
McFadden=s slurred speech
she could tell that McFadden was not okay. 
Thomas had suspected that McFadden might have been using drugs during
the six months prior to that date based on her weight loss and lack of
communication.  She went to McFadden=s home because she
was worried that McFadden was alone with her two children, L.A.M. and a child
from another father.  McFadden appeared
to not be in her normal state of mind.  When
McFadden refused to allow Thomas to take the children with her, Thomas called
the police.  McFadden later confessed to
Thomas that she was using cocaine on the day in question.

Corporal Rick Miranda and Deputy William
Anders, Harris County constables, also testified at trial.  They both went to McFadden=s home on March
30, 2004.  Miranda stated that McFadden
appeared Avery antsy,@ and Anders
described her as Anervous, fidgety.@  They were told that she had taken several
Vicodin pills and had consumed some alcohol. 
At one point during the constables= visit, McFadden
went to the couch, curled into a fetal position, and began rocking back and
forth.  The constables called EMS, and
when the EMS paramedics arrived, they examined McFadden and decided to take her
to the hospital.








McFadden testified that she began using
cocaine about six to eight months prior to March 30, 2004.  On March 30, she ingested cocaine,
amphetamine, methamphetamine, Vicodin, and 
alcohol.  She explained that she
turned to drugs after her husband lost his job, another of her children died
while in the care of her husband, and she and her husband had an altercation.[1]  She further testified that she has taken
steps to end her drug use, has not used cocaine since March 30, and has not had
the desire to use it since that time. 
There was evidence that McFadden submitted to three drug tests during
the pendency of this action and that each returned negative for drug use.  McFadden=s husband also
submitted to two drug tests during the period that returned negative for drug
use.  Thomas testified that McFadden has Abeen doing
wonderful@ since March 30, 2004, and that she would
have no reservations about leaving her own children with McFadden and her
husband for a weekend.  She stated that
she does not think that McFadden needs to have her visitations with L.A.M.
supervised.  McFadden testified that she
thought it was in L.A.M.=s best interest for L.A.M. to live with
Morgan but that she wanted to have unsupervised visitation with L.A.M.

On November 15, 2004, the trial court
entered its final orders, again naming McFadden and Morgan as joint managing
conservators, granting Morgan the right to establish the child=s primary
residence, and including verbatim the requirement quoted above regarding
supervised visitation.  On appeal,
McFadden contends that the trial court erred by continuing the supervised
visitation provision in its final orders and that she did not consent to having
the temporary provision continued into the final orders.

Discussion








In her first issue, McFadden asserts that
the trial court erred in continuing the supervised visitation provisions from
the temporary orders to the final orders. 
We begin by noting that it is difficult to tell from the briefing
exactly what McFadden is arguing under this issue.  She states that A[t]here are no
provisions in the Texas Family Code for continuing temporary orders as final
orders.@  But she fails to cite any authority or make
any argument as to why it would be improper for a court to include the same
provision in its final orders as it did in its temporary orders.  The court did not, as McFadden suggests,
simply order visitation to continue as provided in the temporary orders; after
a trial on the merits, the court entered its final orders, which happened to
have language consistent with that used in the temporary orders.  We see nothing inherently wrong with this
practice.[2]  Accordingly, McFadden=s first issue is
overruled.








In her second issue, McFadden contends
that she did not consent to the trial court=s continuation of
supervised visitation from the temporary orders to the final orders.  She further asserts that a judgment rendered
on a settlement agreement after one party revokes consent to that agreement is
void, citing S & A Restaurant Corp. v. Leal, 892 S.W.2d 855, 857
(Tex. 1995).  However, it is clear from
the record that although the trial court may have based its temporary orders on
an agreement by the parties regarding such temporary orders, the trial court
entered its final orders after a trial on the merits.  McFadden provides no authority or argument to
explain why the court could not enter final orders after a trial on the merits
without McFadden=s consent. 
McFadden testified at trial that she did not want to have to go to her
parent=s house in order
to have visitation with L.A.M.  The trial
court clearly decided otherwise. 
McFadden=s second issue is overruled.

We affirm the trial court=s judgment.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed January 24, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.











[1]  The coroner=s report for the deceased child concluded that the
child drowned to death.  The child was
apparently in the bathtub at the time under the care of McFadden=s husband. 
There was also a suggestion in Thomas=s
testimony that the altercation between McFadden and her husband involved
violence.





[2]  In three
sentences, McFadden points out that she and her husband passed drug tests
during the pendency of the action; additionally, Thomas stated she would have
no reservations leaving her own children with McFadden and in her opinion
McFadden did not need to have her visitation with L.A.M. supervised.  However, McFadden makes no discernable
argument based on these pieces of evidence. 
If these sentences are intended to be attacks on the sufficiency of the
evidence to support the trial court=s
holdings, such argument is improperly briefed. 
See Tex. R. App. P. 33.1(h)
(requiring that an appellant=s brief Amust
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record@).  In her Reply Brief, McFadden asserts that she
had no burden at trial, but Morgan had the burden to show that a modification
would be in the best interest of the child and, among other possibilities, that
the circumstances of the child, a conservator, or other party affected by the
order have materially changed.  However,
again, McFadden makes no actual arguments regarding this assertion.  She also provides no citation regarding this
issue.  See id.

Furthermore, even if we considered either
of these passages as proper attacks on the sufficiency of the evidence, we find
that there was sufficient evidenceCparticularly
McFadden=s admitted drug use while caring for her children and
the death of another child in her home while in the care of her husbandCto support the trial court=s conclusions both that there was a material change in
circumstances and that supervised visitation is in L.A.M.=s best interest. 
See Tex. Fam. Code Ann.
' 156.101 (Vernon Supp. 2005) (providing that a court
may modify an order establishing conservatorship or possession and access if
the modification would be in the best interest of the child and, among other
possibilities, the circumstances of the child, a conservator, or other party
affected by the order have materially and substantially changed); City of
Keller v. Wilson, 168 S.W.3d 802, 809-23 (Tex. 2005) (providing standards
for legal sufficiency review); Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001) (providing standards for factual sufficiency review); In re
A.D.H., 979 S.W.2d 445, 448-51 (Tex. App.CBeaumont
1998, no writ) (considering evidence of drug use in determining whether a
material and substantial change has occurred and whether a modification would
be in the best interests of the child).